Good morning everyone. We're here today for oral argument. We're going to begin with appeal 24-3346. Maurice Holt v. Gary Boughton. Mr. O'Brien, we'll begin with oral argument from you. Thank you, your honor. May it please the court. After applying the Wisconsin rules of evidence, the Wisconsin Court of Appeals upheld the trial court's discretionary decision to exclude evidence from Mr. Holt's trial that had limited probative value and was otherwise cumulative to other properly admitted evidence. Holt failed to prove a Sixth Amendment violation here because, whether or not you agree with the trial court's discretionary decision, he was able to robustly confront and cross-examine all of the witnesses against him, the two victims, his two cohorts who named him as the third robber. He was also able to present through his own testimony and through the testimony of other independent witnesses the dual defense of alibi. I was at home, well I was with the Kellys through the weekend of the my girlfriend at the time, take your pick, and he was able to put on the defense of trying to point the finger at his nephew, Gaucher, as the third robber. The trial as it played out thoroughly shows that he was able to thoroughly put on the defense to confront his accusers, and he has failed, even if you assume error, he has failed to show harmful constitutional error. If we do engage in the harmless error analysis, we use Brecht, correct? Correct. Thank you. Yeah, and the Court of Appeals did apply a harmless error standard, but it was not the chaplain's standard because when it held harmless error, it was reviewing the issue only as a matter of state law, and it applied the state civil harmless error test. But the district court applied Chapman. I'm sorry? The district court applied Chapman. The district court did apply Chapman, and we believe him erroneously well, and it also applied Brecht, and it's our view that the district court failed to hold Mr. Holt to his burden of proving as required by Brown v. Davenport of a grave error here that had an injurious impact on the outcome. With regard to the Strickland claim, applying the principles of Strickland v. Washington, the Wisconsin Court of Appeals upheld the trial court's decision after a thorough evidentiary hearing at which counsel and other witnesses testified, finding that Mr. Holt failed to prove deficient performance in some respects of the 13 claims he alleged and failed to prove prejudice in all respects. Mr. O'Brien, on the two deficient performance claims, two could give us pause. I'm not saying others can't, but the two might be the height question because there was a jury question concerning it, and then DNA because jurors can place outsized emphasis on forensic evidence. With those two areas, should we conclude deficient performance on those, or what are your thoughts? I would say I'm unwilling to concede deficient performance, but I think we can go to the scene. What about the fact on the DNA evidence, though, that the lawyer made a promise during opening statement about what the DNA evidence would show, namely that there was no DNA linking him to the crime and then didn't present any evidence on it and then talked about it again in closing? Correct, but I would say that that goes to the prejudice analysis. He, in essence, got it in through the back door. There was evidence at trial that DNA samples were taken. You can't say that came in the back door based on openings and closings because the jury's instructed that's not evidence. Correct. However, the prosecutor did not object and certainly, but be that as it may, again regarding prejudice, he's trying to point the finger at his nephew. No one's DNA. His, the other two robbers, nor his nephew's DNA was found at the scene. So, if anything, even if counsel hadn't made those arguments, it's possible the jury could speculate, well, wait, the state took the DNA. What should the standard be here? I want to go back to the deficient performance for one second. We've said in the past that for deficient performance, if the attorney articulates a strategic reason for it, that it's not deficient. But here, the attorney during the post-conviction hearing essentially said, I had no reason for this. I had no strategic reason. So, how does that factor into the deficient performance analysis? What should the test be? Well, I think the test is that adopted by the court in Harrington v. Ritker, which is you look at whether counsel's performance was objectively reasonable under the circumstances presented at the time of trial. So, do we consider what counsel said? If counsel testifies and gives a strategic reason, we certainly consider that and defer to it. But if counsel says, no, no, I had no strategic reason, how should that factor in? You know, at the trial level, trial judges will often make findings, credibility findings of, you know, I don't believe counsel's testimony or I don't believe that was a sound strategic reason. At this point, especially given the deference on federal habeas, you look at overall performance. And we look at what happened at trial. We look at, yes, the post-conviction testimony. But we also look at his overall performance, which whether or not he should have introduced evidence that Holt's DNA was not found, which of course would have been rebutted with evidence that no one's DNA was found, or regarding the height discrepancy, whether he should have put in evidence that they were off by three inches, or one of them was off by three inches, that the overall performance shows, and this ties into the presented defense and confrontation claims, that counsel put on a for the jury why Mr. Holt was not guilty, and that Mr. Holt was able to testify that he wasn't even there. And so you look at counsel's overall performance, and I think that's where we're not bound to what an attorney, you know, I think it's Harrington v. Ritter talks about, you know, in hindsight, even the best attorneys will question their decisions and what they should not have done, and that's reasonable. When you lose, you can always find, you can always blame yourself for a number of things, but we're not bound to that, especially on habeas, but even on direct review, that Strickland is a very difficult standard to meet, and it should be, because we really, it's very easy for anyone to engage in 20-20 hindsight analysis and come up with one, two, or in this case, 13 claims of, oh, counsel should have done this, should have done that, and we're not looking at the overall picture of what actually happened, how the trial played out, if we're just look at things in a vacuum and nitpick about, yeah, maybe he should ask that expert. You didn't find Holt's DNA, did you? No, and then I crossed this data, and you didn't find anyone else's out there either, did you? So this is really a non-issue, and as far as the height discrepancy, this was a brutal assault. People were, it was a chaotic situation. Descriptions, height descriptions, weight descriptions are often the fluctuate, and yet what's really telling here is the weight descriptions almost match to the pound, and being off by three inches, especially when these people are on the ground being kicked and beaten, one thing they were certain about is whoever did that was not there the night before, was not the six-foot nephew who was there the night before. It was whoever this third man was that was not there, and his cohorts, Biddle and Dale said it was Holt, and Holt confessed to Dale's brother in prison that, yeah, I pulled the gun, and I hope Dale doesn't snitch on me. This is all, so the long, to make a long story short, you can focus on the prejudice aspect, and that is what the Court of Appeals essentially did for the most part, and whether you find one or two errors or five errors, it does not add up to a reasonable probability of a different outcome. It does not add up to the conclusion that Mr. Holt was denied a fundamentally fair trial. Counsel did the best he could to preserve that right, and Mr. Holt received that fair trial with a reliable, we would say, reliable result, and excluding evidence that had little probative value and that was only cumulative to testimony from a credible detective as opposed to testimony from a not credible cohort to prove that that two masked men, that Holt's nephew was, might have been one of the masked men photographed hours before the robbery. Was there any offer of proof as to whether or not he could have identified the people in the photo? Well, the offer of proof was that, uh, okay, first of all, the answer is, I'll admit the trial court did not allow him to make an offer of proof. He wanted to question. I didn't know if at any point prior to or afterwards or in post-conviction if there was something that I missed. I know the court did not. In the separate appendix to my brief, you have both the Court of, we have the Court of Appeals decision, but also the trial court's decision at the time, and then the post-conviction court's decision reviewing that. In the trial court, the defense attorney did say, Judge, I want to question, Mr. Dale was still on the stand while they took this issue up. He was still sitting on the scene. He said, I want to question him about this, and the judge said, and then he said, I believe he will be able to identify these two men as himself, and then the court interrupted and said, don't say who it is. Don't feed him the answer. Then the discussion continued, and counsel said, and the court said, I'm not going to allow you to question him regardless of whatever his answer would have been. I find this evidence not relevant, not probative, because we can't see who they are, and then at that point, defense counsel said, I think he will identify himself and Mr. Gaucher as the men behind the masks, in violation of the court's order just a few minutes earlier. Don't say who it is. So, again, we're under the assumption that maybe, that Dale might have said, yeah, those guys behind the masks, that's me and Gaucher, but that's certainly subject. Let's not forget that Mr. Dale came off as a very difficult witness for both sides. He admitted lying back and forth. He gave in his assistant's accounts. He retracted his police statements. So, really, whatever answer he would have given would not have proven much. Would you like to reserve the remainder of your time? I'm sorry? Would you like to reserve the remainder of your time? Certainly. Thank you, Mr. O'Brien. Mr. Ruby, we'll now move to you for oral argument on behalf of the appellee. Thank you, Your Honor. May it please the court, counsel. The jury that convicted Maurice Holt never got to hear the most compelling evidence supporting his innocence. Due to a combination of errors by the trial court excluding that evidence improperly or trial counsel failing to present that evidence despite it actually being his strategy to present these things, he failed to do so for a variety of reasons. The Court of Appeals unreasonably applied precedent from the Supreme Court when denying these errors. The district court disagreed and granted habeas. That decision was correct and that decision should be affirmed. There are a few points that have been addressed so far this morning that I want to touch on. Before you go there, could I just clarify one thing, please, Mr. Ruby? Are you making a Sixth Amendment confrontation clause argument or just a Sixth Amendment complete defense argument with the Facebook photos? It's both, Your Honor. For the Sixth Amendment confrontation clause argument, how could this photo qualify given the Supreme Court's case law that says this is cross-extrinsic evidence is not subject to the confrontation clause? Your Honor, when you're talking about extrinsic evidence, my understanding is extrinsic means something... If it's directly relevant to the case, it would be usable for cross-examination. But he was able to ask questions. The defense lawyer was not cut off in the defense, was able to cross-examine him thoroughly. This photo was a piece of separate evidence that didn't implicate the questions that were asked. Is it your argument that this line of case just wouldn't apply to it? I think that counsel should have been able to question Dale about the fact that they took these photos, the circumstances of taking the photos, who was in the photos, the fact that Rayvon Gosha is the second person in the photos and he's the one holding the gun, what type of gun that was, where that came from. If you can't use the photos, it's very difficult to do that. So it definitely implicated his right to cross-examine Mr. Dale on that issue. My position is it's also a right to present evidence in his own defense because these are photographs. This is physical demonstrative evidence. So when the state talks about this being cumulative or covered by the fact that Detective Knoll testified about these photos at trial, the photos are the evidence. The photos are best evidence. It's visual. And you have to consider the importance of visual evidence for juries. And this goes to the Court of Appeals ultimate decision finding harmless error saying that the photos were cumulative. The photos are extremely important because in closing arguments, you know, we're not talking about witnesses anymore. You put those photos up on a screen and tell the jury. Here we have two of the robbers posing together just hours before the robbery, holding a firearm that very well could have been the firearm in the robbery because it's consistent with how the victims described it. And we've got Lyndell Dale here in one mask and we've got Rayvon Gosha here. Were any of those facts contested at trial? Was the evidence that was depicted in the photos contested in any way by the state? I don't think it was, right? There was testimony from Detective Knoll about the fact that there was photos taken with Dale and Gosha posing with firearms earlier. But it's still not the same as showing the jury the photos because, again, nobody talked about what that firearm looked like. So when we say cumulative, the photos can't be cumulative to one witness's perspective in what he saw in the photos because he didn't notice or testify, excuse me, about the fact that that was a silver handgun, which is what one of the victims described. But how is that a constitutional violation? If he was able to get in the underlying facts but not show the photo itself, what's the clearly established Supreme Court law that that's violated? I understand if you were making an argument to the trial court during the course of the trial why you would argue that. That's a great argument for the trial judge. But we're at habeas and it has to be a violation of clearly established Supreme Court precedent. And I don't think there's a case that says if you get in testimony about the underlying facts, and as Judge Kirsch pointed out, they're not disputed, but you can't bring in the photo that somehow that violates a constitutional right. Well, there's certainly plenty of case law on the fact of being able to present evidence in one's defense. So that may not be your strongest argument. It strikes me that your stronger argument may go to paragraphs 27 to 30 of the Wisconsin Court of Appeals decision. That harmless error analysis, if that's what it was, or evidentiary balancing, that's not the clearest drafting in that area. No, absolutely not. I agree with that. It says it for harmless error. As you point out, it really isn't potentially an evidentiary balancing that's going on before concluding that the exclusion of the photos was constitutionally fine. I think that passage can be read more than one way. Isn't that your better argument with regard to whether or not there's a constitutional violation? Absolutely. That harmless error analysis didn't touch on any of the traditional harmless error standards. It basically just went back to whether it should have been admitted or whether there are reasons not to admit it. But it didn't talk about harmless error. An error has to be proven harmless beyond a reasonable doubt. It didn't apply the burden to the state. So perhaps the decision used a buzz phrase of harmless error, but not intending to do so in a manner that invokes all that law. I agree with that. It didn't actually analyze the impact of the error on the evidence. The fact that the jury didn't get to see this very important visual. Even if that's the case, then how does that cost, even if we distance ourselves from the phrase harmless error, how does that itself, how is that incorrect in a matter that would allow for habeas relief given that the Wisconsin Court of Appeals did engage in that analysis? I think that it's contrary to the standard though. The starting point of Chapman's again is the error has to be proven beyond a reasonable doubt, and that the state has to have the burden of that. The error has to be analyzed, but the impact of the error has to be analyzed. I think properly run the Brecht. I know the district court did engage in Chapman, but I think the correct, that Brecht is the correct focus. Sure, I agree with that. The about this case for the fact that the jury didn't get to see that. Because again, this is evidence that the defense could have used these photos not just to question Lindell Dale, but to question law enforcement about these facts. We have these photos. Did anybody show this gun here to the victims? Did anybody try to locate this gun? Did anybody question Lindell Dale about this gun? Did anybody question Raymond Gosho about this gun? There was all these things that the defense could have done with this evidence, including putting it up there for the jury, emphasizing the importance of it, not just questioning Lindell Dale about it. Even if the Court of Appeals, Wisconsin Court of Appeals applied Strickland incorrectly, why is its application unreasonable? Is there isn't there room for fair-minded jurists to disagree about whether any prejudice resulted from the various failures we've been discussing? No, Your Honor. Part of it is starting from the position of you have to consider the strength of the state's case. This is a weak case regardless of what has been argued today. The circuit court acknowledged it was a closed case. The district court said the evidence was not strong. The Court of Appeals said we would not the state's case is overwhelmed. Exactly. So the two witnesses, the two co-defendants that said it was Mr. Holt, both recanted at trial. The two victims who could not identify anyone initially said that the third robber was Deuce. Deuce is the nickname of Mr. Gosho. And although they backtracked later, that's where some of this evidence becomes so important. So we talk about the height evidence. It's not just the fact that Mr. Holt was three inches shorter than the victims described the third robber, which is significant because the victims described a robber that was the exact same height as them. It's also the fact that when asked how they knew it definitely wasn't Deuce, it wasn't Mr. Gosho, one of them said Mr. Gosho or Deuce is not the same build as the third robber. Well, nobody presented evidence on the fact that Rayvon Gosho's build, his height and weight is exactly the description, exactly matches what the victims described for the third robber. So that is part of the impact of the evidence that trial counsel failed to present that the Court of Appeals never actually addressed what the impact was. In its whole discussion of cumulative error analysis, it only talked about the state's evidence. It didn't talk about the impact of these errors. And one of the pieces of evidence that the court brought up is DNA. And I just need to correct something that has been argued here in the briefs and in court here today. It's been argued that, well, they didn't find anybody's DNA. And in the state's brief, it said specifically in the heading that they didn't find Holt's DNA or Gosho's DNA or anybody else's DNA. The state crime lab did not test Gosho's DNA profile against this evidence. So to say, well, they didn't find his DNA is meaningless because they didn't test that. But it is significant that Mr. Holt's DNA was not on this piece of paper that the victims said that the robbers were using to wipe off prints. They did test Dale's though, correct? It did test Dale's. And that didn't show up. Right. Was that evidence presented to the jury? No, there was no evidence presented at all because the attorney wrongfully assumed that the prosecution was going to present the DNA expert when the DNA didn't help the state. So then he gets to court and there's no DNA expert and he can't present evidence on it. And I also have to correct this claim that it came up in the arguments and the prosecutor didn't object. He absolutely did object. He objected and he said that that never came in and the judge sustained it. So the jury did not hear any evidence on the DNA. I also want to address the question that the court raised about trial counsel strategy and his testimony on that, how that impacts it. Counsel has cited the case of Harrington versus Richter talking about what matters is what's objectively reasonable. But that case also includes a statement from the Supreme Court condemning engaging in post hoc rationalization that is contrary to the evidence available of trial counsel's decisions. Trial counsel's decisions and his strategy, the evidence about that is primarily his testimony. And his testimony at the hearing on all of this was that he wanted to do these things. He wanted Brittany Quaddie to testify. He wanted Michael Hayes. What do you think the test should be? It's an objective test. If counsel comes in and testifies as he did that essentially I was deficient in not doing this, is that it? Do we find the performance standard met then or is there more to it given it's an objective test? I think there's still an element of reasonableness both of the strategy and the failure to execute the strategy and looking at the reasons why the strategy wasn't executed and whether those were reasonable. So that gets into things like the complete failure to make actual efforts at subpoenaing this hard to find witness by using the sheriff's department or a defendant and waited for any attempt at real process service until the last minute which Seventh Circuit cases have already talked about how that's not reasonable. So when we talk about the fact that Brittany Quaddie wasn't there in evaluating counsel's decision, his decision was to call her. He wanted to subpoena her. He wanted her there but she wasn't there because he unreasonably failed to subpoena her and make efforts in advance. With Michael Hayes, there was no decision not to present his testimony. Again, counsel subpoenaed him but counsel also didn't review the recording of his statements that showed how important his information was putting Raven Gosher with one of the other robbers before the robbery and after the robbery putting Raven Gosher driving the getaway vehicle basically or being the driver of the robbery. Obviously, counsel's... Didn't they say though in a statement, didn't Mr. Hayes say there was no discussion of the robbery during that time when he drove them? Yes, that was what Mr. Hayes told the detective about that point. Mr. Ruby, where is Mr. Holt? Is he in the Wisconsin Correctional Services? Yes, he's in Jackson Correctional. Very good. Thank you, Mr. Ruby. Thank you. Mr. O'Brien, we'll go back to you now for rebuttal argument. We'll give you two minutes. Regarding the photographs, the question is what did they prove? What they prove is that two masked men, masked persons, we don't even know if it's men, brandished weapons hours before the robbery. That's it. He wanted to ask Dale if one of them was him and if one of them was Gosher. And again, as I said earlier, regardless of how Dale answered that question because of his other credibility issues... What about the argument that the photo could have been used with other witnesses? I'm sorry? What about the argument that the photo could have been used with other witnesses? The detective Noel testified that he himself personally had seen Facebook photos of the unmasked Dale and the unmasked Gosher taken hours before the robbery. So sure, they could have been shown. Again, if you look at the photos, what do they prove? They say a picture is worth a thousand words. Among the words there are not, this is Lyndale Dale and this over here is Mr. Gosher. They don't tell you that. Someone else has to tell you that. The photos don't tell you that. Moreover, counsel makes a big issue out of the identification of the weapon. Well, first of all, these are pretty generic weapons, but more importantly, except you can even see them, but more importantly, when counsel for Mr. Holt tried to introduce those photos, that was not one of the reasons why he wanted them admitted. He didn't argue. This also shows that the guns that were used and they matched the guns described by the victim. That argument was never made at the time, and the post-conviction court and the court of appeals pointed that out, that that particular rationale for admissibility was forfeited. Thank you, Mr. O'Brien, and thank you, Mr. Ruby. The case will be taken under advisement.